UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GEORGE W. GIBBS,

        Petitioner,

v.

ROBERT LEGRAND, WARDEN, *et al.*,

        Respondents.

Case No. 2:11-cv-00750-KJD-CWH

ORDER

This counseled habeas matter comes before the Court for consideration on the merits of the surviving claims of the first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 28). Respondents have answered (ECF No. 75), and petitioner has replied (ECF No. 89).[1]

**Background**

Petitioner was charged with and convicted of thirty counts in state court, including one count each of manufacture or compounding of a controlled substance, conspiracy to manufacture or compound a controlled substance, and trafficking in a controlled substance, nine counts of sexual assault with a minor under fourteen years of age, eleven counts of lewdness with a child under the age of fourteen, four counts of use of a minor under fourteen in producing pornography, and three counts of possession of visual presentation depicting sexual conduct of person under

---

[1] As a preliminary matter, the Court notes that petitioner's reply includes substantial factual and legal arguments and potentially new claims that were not asserted in the petition, in particular regarding petitioner's trial and appellate counsel, Paul Wommer. The Court will not consider any new claims raised in the reply, including petitioner's claim that he was constructively denied counsel because Wommer could not function as effective counsel or any claim that the cumulative errors of counsel entitle petitioner to relief. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

1

fourteen years of age. (Exs. 21 & 27).[2] Petitioner challenges many, but not all, of these convictions in the instant habeas petition.

On December 19, 2000, police officers responded to 2216 Port Avenue in Las Vegas in response to an anonymous tip that there was a methamphetamine lab at the location. (Ex. 20 (Tr. 4-5)). When officers arrived, petitioner was laying on the couch in the living room of the house. (*Id.* at 18-19). After obtaining consent to search from Ronald Deussen, the home's owner, officers located a boxed meth lab in the master bedroom closet, next to a safe, and various drug paraphernalia throughout the house, but mostly in the master bedroom. (*Id.* at 8-11, 19-20). Officers also located petitioner's work ID and a letter addressed to him at 2216 Port Avenue in the master bedroom. (*Id.* at 14-15). Petitioner told the officers that both he and Deussen had access to the master bedroom and that he assisted in cooking methamphetamine there. (*Id.* at 11).

Deussen told officers that the safe belonged to petitioner; when asked whether the safe was his, petitioner initially said yes but then asserted that he was holding it for a friend. (*Id.* at 12 & 41-42). When the safe was opened, it emitted a fairly fresh odor of methamphetamine chemical. (*Id.* at 34). Inside, officers found three VHS tapes in a plastic bag as well as paraphernalia for methamphetamine use and paperwork. (*Id.* at 34-35). Officers began to view the tapes but stopped once they discovered that they contained child pornography involving petitioner and three young girls. (*Id.* at 38). Petitioner was charged in a single criminal complaint with both child pornography/sexual abuse and drug charges. (*See* Exs. 3, 5 & 6).

The three victims who appeared in the tapes testified at trial. Two of the victims were petitioner's daughters and the third was their friend, N.M., who was six or seven at the time the videos were made. In part relevant to the instant petition, N.M. testified as follows:

Q: Do you recall the defendant, Mr. Gibbs, ever putting his penis fully inside of your vagina?

A. No.

Q: So, he never had full what we would call "intercourse" with you?

A. Yes, he never had.

---

[2] The exhibits cited in this order, which comprise the relevant state court record, are located at ECF Nos. 29 to 40.

2

> Q: Okay. All right. Would the defendant ever rub his penis in the area of your vagina?
>
> A: No.
>
> Q: Not that you remember?
>
> A: Not that I remember.

(Ex. 22 (Tr. 94)). N.M. was later asked by defense counsel: "[Y]ou also indicated when Mr. Peterson was asking you questions, that Mr. Gibbs never placed his penis inside your vagina, correct?" N.M. responded: "That's true." (*Id.* at 96).

Deussen testified that petitioner had arrived at his house only a week prior after spending about a month and a half in Utah with his family. (*Id.* at 112-13 & 116). Deussen further testified that petitioner had been living at Deussen's house, on the couch, on and off for about three or four months before going to Utah. (*Id.* at 116-17). But, Deussen testified, the meth lab belonged to Deussen and petitioner had nothing to do with the lab, the chemicals or the distribution of methamphetamine. (*Id.* at 114-15). Further, Deussen testified that petitioner's papers had been found in the master bedroom only because petitioner had asked to store them there while he was in Utah and he had nowhere else to put them. (*Id.* at 113).

**Standard**

28 U.S.C. § 2254(d) provides the legal standards for this court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must

4

> be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

As the state courts reached the merits of petitioner's claims, their decisions are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, -- U.S. --, 135 S. Ct. 2187, 2208 (2015).

**Analysis**

Three grounds of the petition remain for review on the merits.[3] Ground Two asserts a sufficiency of the evidence claim with respect to one of the sexual assault convictions and all three drug convictions. Ground Three asserts a claim of ineffective assistance of trial counsel based on several alleged errors. And Ground Four asserts a claim of ineffective assistance of appellate counsel based on counsel's failure to raise double jeopardy challenges on appeal.

I. Ground Two

In Ground Two, petitioner asserts that insufficient evidence was presented at trial to sustain his conviction for sexual assault under Count XX or any of his drug convictions in violation of his Fifth and Fourteenth Amendment rights.[4]

A federal court collaterally reviewing a state court conviction for sufficiency of the evidence does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). That is, "faced with a record of historical facts that supports

---
[3] Ground One of the petition was dismissed pursuant to the Court's order of March 14, 2016. (ECF No. 68).
[4] Petitioner's reply suggests, but does not directly assert, a Sixth Amendment claim, as well, but as this claim – to the extent it is one -- was not raised until the reply, the Court will not consider it. *See Cacoperdo*, 37 F.3d at 507.

conflicting inferences" the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010).

A. Count XX

Count XX charged petitioner with sexual assault based on the allegation that he penetrated N.M.'s vagina and/or anus with his penis as depicted on "Tape 2 recovered from [petitioner's] safe." (Ex. 21 at 7). As discussed, N.M. testified that petitioner had never penetrated her with his penis. (Ex. 22 (Tr. 94 & 96)). Petitioner therefore asserts that there was no evidence to support the conviction on this count. Respondents argue that N.M. was only six or seven at the time of the alleged assault, that she qualified her response by stating "[n]ot that I remember," and that N.M. did not remember this particular assault is irrelevant because there was videotaped proof that it occurred, which was shown to the jury. Petitioner replies that the video does not prove that any penetration took place and at most suggests only that a lewd act occurred.

In rejecting the claim, the Nevada Supreme Court held:

> Gibbs argues there is insufficient evidence to support his conviction for one count of sexually penetrating a minor under the age of fourteen. This court reviews the evidence in a light favorable to the prosecution and determines whether a rational juror could have found the defendant committed the crime beyond a reasonable doubt. Gibbs bases this argument on the fact that the minor testified Gibbs never placed his penis in her vagina. However, she premised this statement with "[n]ot that I remember." She was only six or seven years old when this sexual conduct occurred and fourteen when she testified. The jury viewed the admitted videotapes and could have found penetration occurred because Gibbs was on top of the minor from behind and was moving her hips. Afterwards, the minor was crying and Gibbs attempted to comfort her. Thus, we hold substantial evidence supports the jury's verdict for this offense.

(Ex. 34 at 5) (footnotes omitted).

The Nevada Supreme Court's conclusion was not objectively unreasonable. In the video, petitioner commits several lewd acts and digital penetrations prior to the apparent penile penetration, none of which caused the victim to cry. It was only when and after petitioner positioned and moved himself in manner that suggested penile penetration that the child began to cry.[5] This is strong circumstantial evidence of penile penetration, and the Court has no difficulty

---
[5] The Court would note that it was actually much more than simple crying, as the child in fact appeared to first gasp – as if in pain – in tandem with petitioner's thrusts before she began crying.

6

concluding that a reasonable juror could have found petitioner penetrated N.M. with his penis beyond a reasonable doubt. As sufficient evidence therefore supported petitioner's conviction pursuant to Count XX, the Nevada Supreme Court's decision concluding the same was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner is not entitled to relief on subpart A of Ground Two.

B. Counts I, II and III

Count I charged petitioner with manufacturing methamphetamine, Count II charged him with conspiracy to manufacture methamphetamine, and Count III charged him with trafficking in methamphetamine through actual or constructive possession of at least 28 grams of methamphetamine. (Ex. 21 at 2). Petitioner asserts that the evidence was insufficient to convict him of these counts because the evidence at trial was that he did not own 2216 Port Avenue, did not live at 2216 Port Avenue and was sleeping on the couch only temporarily, and did not own or have knowledge of the meth lab or materials for producing methamphetamine. (Ex. 20 (Tr. 19-20); Ex. 22 (Tr. 112-15)). Petitioner argues that the State offered no evidence to contradict these facts.

Petitioner raised this claim on direct appeal. (Ex. 30 at 9). In rejecting the claim, the Nevada Supreme Court held:

> Gibbs argues that there is insufficient evidence to support his conviction for conspiring to manufacture, manufacturing, and trafficking methamphetamine. During the search of the master bedroom, officers found several pipes used to ingest methamphetamine, mirrors, razor blades, jars containing liquids used to produce methamphetamine, as well as methamphetamine itself. The officers also discovered a methamphetamine lab in a suitcase in the closet in the master bedroom. Detective Richard Sanchez testified that in his training and experience the person in possession of the lab was manufacturing methamphetamine. The jury could have determined that Gibbs possessed or accessed these methamphetamine items because officers found, in the master bedroom, his work identifications and an envelope addressed to him at the residence. Plus, Gibbs had lived at the residence on and off for three to four months. Additionally, the safe was located in the closet in the master bedroom next to the methamphetamine lab. The jury could have found Gibbs owned the safe because he first told officers he did, Deussen stated it was Gibbs', and videotapes of Gibbs were in the safe. When opened, the safe smelled like fresh methamphetamine and officers found three paraphernalia kits used to ingest methamphetamine under the videotapes of Gibbs. Moreover, Martin testified that Gibbs told him he had access to the bedroom and that he helped with the manufacturing of methamphetamine. Thus, we hold that sufficient evidence supports Gibbs' convictions relating to methamphetamine.

7

(Ex. 34 at 5-6) (footnote omitted).

The Nevada Supreme Court's decision was not objectively unreasonable. Although petitioner denied ownership of the safe, his homemade pornography tapes were found inside, Deussen said the safe belonged to petitioner, and petitioner initially claimed ownership of the safe. The safe was located next to the boxed meth lab and emitted a strong smell of fresh methamphetamine when opened. Petitioner's papers were in the master bedroom, where the lab and the safe were found, and petitioner admitted to officers that he had access to the room. More than 28 grams – 41.93 to be exact – were recovered from 2216 Port Avenue. (*See* Ex. 20 (Tr. 50)). Finally, and most importantly, petitioner told officers that he assisted in the cooking of methamphetamine. Petitioner's admission, considered alongside the evidence suggesting he had at least constructive possession of the meth lab and its materials, was sufficient evidence to establish that: (1) petitioner manufactured meth; (2) that he manufactured meth with Deussen pursuant to an agreement; and (3) that he possessed at least 28 grams of methamphetamine. This evidence was sufficient to rebut Deussen's testimony, on which petitioner relies, that petitioner was not involved in the methamphetamine lab. Accordingly, the Nevada Supreme Court's conclusion was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner is not entitled to relief on this subpart B of Ground Two.

II. Ground Three

In Ground Three, petitioner asserts trial counsel was ineffective by failing to: (1) move to sever the drug charges from the rest of the counts; (2) adequately investigate potential alibi witnesses; and (3) request a jury instruction on mere presence or mere association.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief— deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.*

Review of an attorney's performance must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Id.* at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.* Counsel's performance is "measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 189. The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 190 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Id.* at 181-89. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," id. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* at 105 (internal quotations and citations omitted).

A. Failure to File Motion to Sever

Petitioner argues that because the drug charges were not part of a common plan or scheme with the sexual assault charges, counsel should have moved to sever them pursuant to Nev. Rev. Stat. § 173.115. Petitioner asserts that trying the charges together prejudiced him with respect to the drug charges both because of the highly inflammatory nature of the evidence on the child pornography/sexual assault charges and because he could not testify in his defense against the drug charges. Petitioner argues that evidence supporting the child pornography/sexual assault charges would not have been admissible in a trial on the drug counts. Further, petitioner – who had no felony priors – claims he would have testified that he had nothing to do with the methamphetamine lab and had only just returned from Utah the night before, but because doing so in a trial also involving child sexual abuse charges was inadvisable, petitioner was unable to defend himself against the drug charges.

Respondents disagree that evidence of the sexual assaults would have been not have come in during a drug charges trial, arguing that "much of the evidence was cross admissible in separate trials, to lay foundation for the admissibility of evidence" so "[s]everance would have been an empty gesture." (ECF No. 75 at 15 n.3). Specifically, respondents argue that the child pornography tapes would have been admitted because they were strong evidence of petitioner's access to and control over the room where the meth lab was found. (*Id.*) Respondents further argue that petitioner cannot show prejudice because the evidence against him on the drug charges was overwhelming.

In addressing this claim, the Nevada Supreme Court found that counsel's conduct was deficient but that petitioner could not establish prejudice. It held:

> Gibbs argues that the district court erred in denying his claim that his trial counsel was ineffective for failing to move to sever the drug charges from the molestation charges. As the molestation charges were not based on the same transaction or common scheme as the drug charges, Gibbs' counsel was deficient for failing to move to sever the counts. See NRS 173.115. However, considering the overwhelming evidence of guilt relating to each charge, Gibbs failed to demonstrate prejudice from counsel's failure to move to sever the charges. See Robins v. State, 106 Nev. 611, 619, 798 P.2d 558, 564 (1990) (providing that misjoinder will result in reversal "only if the error has a substantial and injurious effect or influence in determining the jury's verdict.'" (quoting Mitchell v. State, 105 Nev. 735, 739 782 P.2d 1340, 1343 (1989))). Therefore, the district court did not err in denying this claim.

(Ex. 126 at 5).

The Court agrees with the Nevada Supreme Court that counsel was deficient in failing to file a motion to sever the charges, as the risk of prejudice inherent in going to trial on both sets of charges together was absolutely clear and because severance likely would have been granted as the charges were completely unrelated.

The question of prejudice is closer. Contrary to respondents' arguments, the Court is not convinced that evidence of the child pornography or sexual assaults would have been admitted in a trial involving only the drug counts. While the fact that tapes belonging to petitioner were found in the safe would have been relevant to demonstrating petitioner's access to and control over the master bedroom, it would have been unnecessary and highly prejudicial to delve into the nature of those tapes. All that needed to be proven was that the tapes belonged to petitioner, something that could have been accomplished with testimony only that petitioner appeared on the tapes (assuming he did not stipulate to that fact). Further, while there was strong evidence supporting the drug charges, the strongest evidence was petitioner's own admission that he helped to cook the methamphetamine. Importantly, petitioner maintains that if he had received a separate trial on the drug charges he would have testified in his defense and denied involvement. Given petitioner's lack of criminal history and absent any indication as to why petitioner might not have testified otherwise, the Court finds it reasonably likely that petitioner would have testified as he maintains. Absent the highly inflammatory child pornography evidence and with petitioner's testimony denying involvement, it is certainly debatable whether it is reasonably likely the outcome of the proceedings would have been different had the trials been severed. Nevertheless, the Court cannot conclude that the Nevada Supreme Court's conclusion that petitioner had failed to demonstrate

prejudice was objectively unreasonable in that no fair-minded jurist could agree with it. Accordingly, as the Nevada Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law, petitioner is not entitled to relief under subpart A of Ground Three. The Court will however grant petitioner a certificate of appealability as to petitioner's claim that trial counsel rendered ineffective assistance of counsel for failing to file a motion to sever.

B. Failure to Investigate Potential Witnesses

Petitioner asserts that he told his attorney the names of witnesses who could have testified that he was in Utah until the day before the police search, which would have shown that he "was merely present in the home where the methamphetamine was being manufactured and had no knowledge or involvement in the action." (ECF No. 28 at 16-17). Respondents argue that this evidence is irrelevant because petitioner was there when the police arrived and admitted to his involvement in manufacturing meth.

In rejecting this claim, the Nevada Supreme Court held:

> Gibbs argues that the district court erred in denying his claim that his trial counsel was ineffective for failing to investigate and present evidence that Gibbs had been in Utah until shortly before his arrest. We disagree. A search of the home in which Gibbs was arrested revealed the makings of a drug lab, other drugs and paraphernalia, and a strong odor of fresh methamphetamine. Gibbs also admitted to assisting in methamphetamine production. In light of this evidence, Gibbs failed to demonstrate that the result of the trial would have been different had his counsel investigated a potential alibi. See Molina v. State, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Therefore, the district court did not err in denying this claim.

(Ex. 126 at 3).

The Nevada Supreme Court's conclusion was not objectively unreasonable. In light of the fact that at least one letter, addressed to petitioner at 2216 Port Avenue, was located in the house, along with a safe containing petitioner's property immediately adjacent to the boxed meth lab, and petitioner's admission that he helped cook methamphetamine, the Court cannot conclude that even if petitioner had presented his purported alibi witnesses that the result of the proceedings would have been any different. Accordingly, petitioner has established neither deficient performance nor prejudice. The Nevada Supreme Court's conclusion that petitioner had not established ineffective

assistance of counsel with respect to the failure to investigate alibi witnesses was not therefore contrary to, or an unreasonable application of, clearly established federal law.

Petitioner is not entitled to relief on subpart B of Ground Three.

C. Failure to Request Jury Instruction

Petitioner argues that his counsel was ineffective in failing to request a jury instruction providing that mere presence or mere association was insufficient to convict him of the drug charges. Respondents assert that because petitioner admitted to involvement in processing methamphetamine, he cannot show prejudice.

In rejecting this claim, the Nevada Supreme Court held:

> Gibbs argues that the district court erred in denying his claim that his trial counsel was ineffective for failing to proffer jury instructions on . . . mere presence, and mere association. Considering the aforementioned evidence of Gibbs' guilt, we conclude that he failed to demonstrate that had the proffered instructions been given, he would not have been convicted. Therefore, the district court did not err in denying this claim.

(Ex. 126 at 6).

The Nevada Supreme Court's conclusion was not objectively unreasonable. As just discussed, substantial evidence – including petitioner's own admission – supported his conviction on the drug charges and therefore there is no reasonable probability that the outcome of the proceedings would have been any different had counsel requested, and the court given, a jury instruction on mere presence or mere association. Petitioner has thus established neither deficient performance nor prejudice with respect to this claim. The Nevada Supreme Court's conclusion that petitioner had not established ineffective assistance of counsel with respect to the failure to request instructions on mere presence or mere association was not therefore contrary to, or an unreasonable application of, clearly established federal law.

Petitioner is not entitled to relief on subpart C of Ground Three.

III. Ground Four

In Ground Four, petitioner asserts that appellate counsel was ineffective for failing to raise two double jeopardy claims on direct appeal. First, petitioner asserts that his convictions for possession of child pornography punish the same conduct involved in the use of a minor under

fourteen for production of pornography and thus violate the prohibition against double jeopardy. Second, petitioner asserts that his convictions for lewdness with a minor are redundant of his convictions for sexual assault and thus also violate the Double Jeopardy Clause.

The Double Jeopardy Clause prohibits the imposition of multiple punishments for the same offense. *See Ball v. United States*, 470 U.S. 856, 864-65 (1985). Where the same act constitutes a violation of two distinct statutes, the test to determine whether there are two offenses or only one for double jeopardy purposes is whether each offense "requires proof of a fact which the other does not." *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

With respect to the first argument, the Nevada Supreme Court held:

> Gibbs argues that the district court erred in denying his claim that his appellate counsel was ineffective for failing to challenge his convictions for use of a minor in the production of pornography and possession of child pornography as redundant. We disagree. The charges for use of a minor in the production of pornography were not redundant with each other as each charge related to a separate incident where a minor was used. See Wilson v. State, 121 Nev. 345, 357, 114 P.3d 285, 294 (2005). Similarly, the charges of possession of child pornography were not redundant as each related to a separate videotape. Lastly, the charges for use of a minor in a sexual performance did not punish the same illegal acts as the charges for possession of child pornography. Salazar v. State, 119 Nev. 224, 228, 70 P.3d 749, 751; see NRS 200.710 (prohibiting the enticement of a minor into a sexual performance); NRS 200.730 (prohibiting the possession of a visual depiction of a minor engaged in sexual conduct). Therefore, the district court did not err in denying this claim. [FN 2: To the extent Gibbs challenges his convictions for use of a minor in the production of pornography and possession of child pornography as violative of double jeopardy, we conclude that his claim lacks merit because of those offenses "requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).].

(Ex. 126 at 2 & n.2).

The Nevada Supreme Court's decision was not objectively unreasonable. The crime of use of a minor to produce pornography requires proof of a fact that possession of child pornography does not, and vice versa. *See* Nev. Rev. Stat. § 200.710 (punishing use of a minor to stimulate or engage in or assist others to stimulate or engage in sexual conduct to produce a performance without any requirement that defendant maintain possession of the depiction); Nev. Rev. Stat. § 200.730 (punishing possession of a visual depiction of a minor engaged in sexual conduct without any requirement that the accused have produced the visual depiction); *see also Wilson v. State*, 114 P.3d 285, 294-95 (Nev. 2005). To the extent petitioner argues that the use of a minor charges

14

violated double jeopardy because they were redundant of one another, that claim is without merit. Each conviction punished a separate act: (1) Count VII punished use of victim L.G. to produce Tape 1; (2) Count VIII punished use of N.M. to produce Tape 1; (3) Count XII punished use of N.M. to produce Tape 2; (4) Count XXII punished use of N.M. to produce Tape 3; (5) Count X punished possession of Tape 1; (6) Count XXI punished possession of Tape 2; and (7) Count XXIV punished possession of Tape 3. (*See* Ex. 21).

In rejecting petitioner's double jeopardy claim with respect to the lewdness and sexual assault charges, the Nevada Supreme Court held the convictions did not violate double jeopardy because "lewdness with a minor is not a lesser included offense of sexual assault of a child . . . ." (Ex. 126 at 1 n.1). The court further held that petitioner had not demonstrated that his attorney was ineffective for failing to challenge the convictions as redundant because "[t]he record on appeal [did] not contain sufficient information to conclude that any of the acts of lewdness with a minor were incidental to any of the acts of sexual assault." (*Id.* at 1).

The Nevada Supreme Court's rejection of petitioner's double jeopardy claims was not objectively unreasonable. Under *Blockburger*, petitioner's convictions for lewdness and sexual assault did not violate double jeopardy as each statute requires proof of a fact that the other does not. *See* Nev. Rev. Stat. § 200.366 (punishing sexual penetration or forcing another to make a sexual penetration without any requirement that the act be done with the intent to arouse, appeal to or gratify the lust of the accused or the child); Nev. Rev. Stat. § 201.230 (punishing any lewd or lascivious act *other than* sexual assault with the intent to arouse, appeal to, or gratify the lust of passion of the accused or the child). Further, and for the same reason, lewdness with a minor under fourteen is not a lesser included offense of sexual assault on a minor under the age of fourteen because it requires proof of facts that are not elements of a sexual assault – namely, a lewd or lascivious act other than a sexual assault done with the intent to gratify or arouse the passions of the defendant or the victim. Petitioner argues, pursuant to *Ball v. United States*, 470 U.S. 856 (1985), that petitioner's convictions for both lewdness and sexual assault run afoul of the double jeopardy clause because they are part of the same criminal transaction and thus have "merged." Petitioner argues that Nevada has adopted this "merger" theory under its doctrine of redundancy

15

and that under Nevada law petitioner's sexual assault and lewdness convictions are clearly redundant.

Even assuming that a conviction that is redundant under Nevada state law violates the Double Jeopardy Clause,[6] petitioner has not established that any of his lewdness convictions is redundant of any of his sexual assault convictions. To begin, under Nevada law lewdness and sexual assault are mutually exclusive, meaning that one sex act cannot violate both statutes. *Braunstein v. State*, 40 P.3d 413, 420 (Nev. 2002) (citing *Townsend v. State*, 734 P.2d 705, 710 (Nev. 1987)). Thus, in order for a petitioner to be convicted of both lewdness and sexual assault, he must have engaged in or caused both a lewd act and a sexual penetration – two acts. However, Nevada law considers a conviction for a lewd act that occurs incidental to a sexual assault to be redundant of a conviction for the sexual assault and will "reverse 'redundant convictions that do not comport with legislative intent.'" *Braunstein*, 40 P.3d at 421 (affirming trial court's striking of lewdness conviction where petitioner convicted of both sexual assault and lewdness for the act of placing his hand under the victim's panties and digitally penetrating her); *see also Crowley v. State*, 83 P.3d 282, 285-86 (Nev. 2004) (finding that act of rubbing the victim's private parts outside the pants, then putting hand inside the pants and touching the victim's penis, then pulling down the victim's pants and performing fellatio constituted one sex act because the lewd acts were incidental to the sexual assault); *Townsend*, 734 P.2d at 710 (finding that fondling that took place before sexual assault did not merge with the sexual assault, "particularly in light of the fact that Townsend stopped that activity before proceeding further," but that act of rubbing lubricant in the vagina, taking hand away to put more lubricating substance on the finger and then penetrating the victim was one single act).

A review of the record indicates that, as charged, eight of petitioner's eleven lewdness convictions are completely unrelated to any of the alleged sexual assault convictions and thus cannot be argued to be redundant. (*See* ECF No. 21 at 4 (Counts IX and X); 8-9 (Counts XXV-XXIX)). With respect to Tape 2, petitioner was charged with three counts of lewdness and five counts of sexual assault. Specifically, petitioner was charged with three different lewd acts: (1)

---

[6] Respondents disagree with this proposition but the Court need not decide the issue here.

16

fondling the victim's naked body; (2) rubbing his penis against the victim's naked body; and (3) making the victim masturbate his naked penis. There are multiple lewd acts apparent on the tape, which runs about 45 minutes in total. However, it is clear to the Court that petitioner committed each one of the above alleged lewd acts at least once in a manner that was not incidental to any sexual penetration. Petitioner bears the burden of establishing by a preponderance of the evidence the facts underlying his federal habeas claim. *See Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976). Petitioner has not explained how any of his lewdness convictions was incidental to a sexual assault. Petitioner also failed to substantiate this claim before the Nevada Supreme Court. Accordingly, petitioner has not established that his convictions violate double jeopardy, and the Nevada Supreme Court's conclusion of the same was not therefore contrary to, or an unreasonable application of, clearly established federal law.

Petitioner is not entitled to relief on Ground Four.

**Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines, with one exception, that none meet that standard. As discussed above, the Court will grant petitioner a certificate of appealability on the issue of whether trial counsel rendered ineffective assistance of

counsel by failing to file a motion to sever the drug charges. The Court will deny petitioner a certificate of appealability on all other claims.

**Conclusion**

In accordance with the foregoing, IT IS ORDERED that the first amended petition for writ of habeas corpus (ECF N. 28) is DENIED and this habeas action is therefore DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Court DENIES petitioner a certificate of appealability except with respect to whether trial counsel rendered ineffective assistance of counsel by failing to file a motion to sever. As to that issue, the Court GRANTS petitioner a certificate of appealability.

IT IS FURTHER ORDERED that the Clerk of Court shall enter final judgment accordingly and CLOSE this case.

DATED THIS 10 day of May 2018.

KENT J. DAWSON
UNITED STATES DISTRICT JUDGE